UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-107-11 (DWF/TNL)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BHUNNA WIN,
a/k/a Bhunna Siriangkhunwanish,
a/k/a J'Yung,

        Defendant.

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SEVER**

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Melinda A. Williams and Laura M. Provinzino and Melinda A. Williams, Assistant United States Attorneys, files this response in opposition to defendant Bhunna Win's motion to sever (Doc. No. 836).

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Bhunna Win was charged by indictment, along with 21 other co-defendants, with crimes related to a sex trafficking and money laundering conspiracy. District Court Docket ("DCD") # 1, 16, 314, 830. Of the twenty-two defendants, fifteen have pled guilty and seven remain set for trial, which is set to occur on November 5, 2018. DCD 768.

The third superseding indictment ("indictment") details at length the sex trafficking and money laundering conspiracy, explaining that since at least 2009 and continuing to present, the organization trafficked hundreds of women from Bangkok, Thailand to various cities across the United States, including Minneapolis, where the

1

women worked in "houses of prostitution" in order to pay off exorbitant bondage debts, often between $40,000 and $60,000. DCD 830 at paragraphs 2, 3. The indictment explains that the defendants served different roles in the criminal organization, including that of trafficker, house boss, money launderer, and facilitator. *Id.* at paragraph 5.

Specific to defendant Win, the indictment identifies Win as one of nine indicted money launderers who served the sex trafficking organization by making their bank accounts available and coordinating the deposit of cash generated from the commercial sex trafficking into accounts they controlled and then coordinating subsequent withdrawals as well as other transfers of funds to conceal the illegal source of the funds, to avoid reporting requirements, and to promote the commercial sex operation. *Id.* The money launderers also coordinated the procurement and movement of money in and back to Thailand as payment for the bondage debts owed by the trafficking victims. *Id.*

All of the seven defendants that remain for trial are charged with at least one common conspiracy, that is, the Conspiracy to Engage in Money Laundering (Count 4), in violation of Title 18, United States Code, Section 1956. *Id.* at paragraphs 31-33. Count 4 sets forth the specified unlawful activity underlying the money laundering conspiracy as Transportation for Prostitution, in violation of Title 18, United States Code, Section 2421, and Sex Trafficking, in violation of Title 18, United States Code, Section 1591. *Id.* at paragraph 32. The indictment repeatedly charges, across counts, that the money laundering was part and parcel of and vital to the

overarching conspiracy.  *Id.* at paragraphs 5, 9, 18, 19, 20.  In addition to Conspiracy to Engage in Money Laundering (Count 4), defendant Win is charged with Unlicensed Money Transmitting Business (Count 6) and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity (Counts 7 – 11), that is, Transportation for Prostitution and Sex Trafficking.

## ARGUMENT

Win moves to sever her trial from that of her co-defendants, arguing that a severance is required under Rule 14.  The defendant's argument is without merit and should be rejected by this Court.

Rule 14(a) of the Federal Rules of Criminal Procedure provides for relief from prejudicial joinder as follows:

> **(a) Relief.**  If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

The Supreme Court has repeatedly reminded federal courts that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 536 (1993); *see United States v. Bordeaux*, 84 F.3d 1544, 1547 (8th Cir. 1996).  As the Court has explained: "Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537 (quotations and citations omitted).  Defendants "are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* at 540.  Rather, a district court is to grant a severance "only

if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

A defendant attempting to demonstrate the requisite prejudice under Rule 14(a) "carries a heavy burden." *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010) (quoting *United States v. Swinney*, 970 F.2d 494, 500 (8th Cir. 1992)). "Because defendants who are jointly indicted on similar evidence from the same or related events should normally be tried together, to warrant severance a defendant must show 'real prejudice,' that is, 'something more than the mere fact that he would have had a better chance for acquittal had he been tried separately.'" *United States v. Mickelson*, 378 F.3d 810, 817-818 (8th Cir. 2004) (quoting *United States v. Oakie*, 12 F.3d 1436, 1441 (8th Cir. 1993). A defendant can demonstrate real prejudice by showing "(a) his defense is irreconcilable with that of his co-defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants." *Id.* at 818 (citing *United States v. Washington*, 318 F.3d 845, 858 (8th Cir. 2003). "The burden of showing a clear likelihood of prejudice falls on the party seeking severance." *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006).

"Trying codefendants together not only conserves scarce time and resources, but also 'gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" *Id.* (quoting *United States v. Darden*, 70 F.3d 1507, 1528 (8th Cir. 1995). Not every defendant joined must have participated in every offense charged for joinder to be appropriate. *United States v.*

*Delpit*, 94 F.3d 1134, 1143 (8th Cir. 1996) (citing *United States v. Jones*, 880 F.2d 55, 62-63 (8th Cir. 1989)).  Moreover, "[g]enerally, the risk that a joint trial will prejudice one or more of the defendants 'is best cured by careful and thorough jury instructions.'"  *Davis*, 534 F.3d at 917 (quoting *United States v. Mickelson*, 378 F.3d 810, 817–18 (8th Cir. 2004)).

Defendant Win spends the bulk of her motion describing the mechanics of a small portion of her money laundering scheme (*i.e.*, as set forth in the indictment, using a *hawala* system to move criminal proceeds from Los Angeles to Thailand) and ignoring the allegations in the indictment that she did so as a co-conspirator in and for the benefit of the criminal trafficking organization.  While she discusses the legal Thai massage industry at length, she brushes aside the fact that the two co-defendants with whom defendant Win primarily dealt have both pled guilty to laundering money derived from commercial sex activities for the criminal organization.  Moreover, Win does not detail the numerous steps she took to conceal her illegal money laundering activities from detection by law enforcement, including accepting bulk cash from co-defendants, utilizing a rotating number of bank accounts, and instructing others to structure deposits at low levels so as not to attract attention from the authorities.  Defendant Win then asserts that the prejudice of being tried with her co-defendants "is manifest" and cites to a single case—*United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006)—in support of her argument.

At the outset, *Hively* is inapposite and in fact counsels that severance is *not* appropriate in a case such as this.  In *Hively*, three defendants—two attorneys

(Hively and Ketz) and a bail bondsman (Edwards)—were charged, including with a pattern of racketeering activity, in a scheme to fraudulently obtain grant money from two government programs, one of which involved the attorneys acting as part-time deputy prosecutors to process drug cases. *Id.* at 757. The evidence included predicate acts by Hively and Edwards of extorting individuals, including a man charged with molestation and a woman whose husband was charged with murder. *Id.*

While an initial severance was granted, the cases were rejoined after the judge who granted the severance recused himself when a potential conflict of interest came to light. *Id.* at 758. Following reassignment, the new judge granted the government's motion to rejoin the cases for trial—defendant Hively attempted two interlocutory appeals, both of which were "summarily dismissed" by the Eighth Circuit. *Id.* at 759. Following a joint trial and the conviction of both Hively and Ketz of various counts, defendant Ketz appealed the rejoining of the cases, arguing that under Rule 14(a) he was entitled to a severance because there was a substantial likelihood of prejudicial spillover from the greater amount of evidence against Hively. *Id.* at 765.

The Eighth Cirucit rejected Ketz's argument, finding that his claim of prejudice was "speculative and insufficient to overcome the presumption in favor of a joint trial." *Id.* Noting the strong preference in favor of joint trials, the Court explained that, although "some of the extortion evidence which did not pertain to Ketz was of an unsavory nature, the court's instructions to the jury sufficiently distinguished the charges against each defendant to guard against any spillover

6

effect[.]" *Id*. at 766. Defendant Win does not explain in her motion how *Hively* supports her bald assertion that severance is appropriate and, indeed, it does not.

Moreover, defendant Win ignores the fact that she is charged *in a conspiracy* with each of her co-defendants. In *United States v. Darden*, 70 F.3d 1507, 1516 (8th Cir. 1995), seven co-defendants were charged with participating in a criminal racketeering enterprise, the Jerry Lewis Organization or "JLO," that controlled a large percentage of the heroin and cocaine markets in north St. Louis. Lewis, one of the charged co-defendants, obtained and maintained his position by murdering competitors and others who threatened his organization. *Id*. Four of the co-defendants (Bennett, Darden, Seals, and Williams) sought to sever their cases at trial, arguing both antagonistic defenses and prejudice. *Id*. at 1527.

In upholding the district court's refusal to sever, the Eighth Circuit Court of Appeals explained that, while Bennett, Darden, Seals, and Williams contended that only a small part of the evidence implicated them in the activities of the JLO and that such a disparity of evidence resulted in prejudicial "spill-over," their arguments were fatally flawed

> because they gloss over the fact that they were indicted as members of a RICO conspiracy that included all of their co-defendants. Each defendant may be held accountable for actions taken by other defendants in furtherance of the conspiracy, and thus all of the evidence offered at trial relating to the activities of the JLO, regardless of whether Bennett, Darden, Seals, and Williams directly participated in those activities, would be admissible against them if they had been given separate trials.

*Id*. Here, too, defendant Win fails to appreciate that she is charged in a conspiracy with all of her co-defendants. Thus, her desire to separate herself from their crimes

is fatally flawed, as the acts of each co-conspirator is admissible against defendant Win, even if she were given a separate trial.

Similarly, defendant Win makes no attempt to grapple with the fact that the charges against her are based on specified unlawful activity—that is, transportation for prostitution and sex trafficking—that necessarily require the government to admit proof of the underlying offenses at trial. For this very reason, courts have routinely rejected motions to sever by defendants charged with money laundering from their co-defendants who committed the specified unlawful activities. *See, e.g., United States v. Coleman*, 1997 WL 135694, *2 (E.D. Pa. March 12, 1997) (denying motion to sever a defendant charged in a money laundering conspiracy from twenty-one other co-defendants, explaining that when an indictment alleges that a defendant laundered illegal proceeds, the money launderer is properly joined with other co-defendants who committed the underlying SUAs that generated the proceeds, even if the money launderer is not charged with the SUA); *United States v. Marzano*, 160 F.3d 399, 401 (7th Cir. 1998) (money launderer property joined with co-defendants even where money launderer was not charged with the underlying SUA); *United States v. Conway*, 2012 WL 5425316, *3, (E.D.N.C. Nov. 6, 2012) (same).

The concerns Win raises about a joint trial are best dealt with "careful and through jury instructions." *Delpit*, 94 F.3d at 1144 (citing *Zafiro*, 506 U.S. at 540-41) The Eighth Circuit pattern instructions cover many of the issues raised in Win's motion. *See, e.g.*, 8th Circuit Model Instruction 3.08 ("Keep in mind that you must give separate consideration to the evidence about each individual defendant. Each

8

defendant is to be treated separately . . ."); 2.14 ("You may consider some of the evidence in this case only against defendant (name); you may not consider that evidence against the other defendant[s]."). There is no reason to believe a properly instructed jury will not be able to fairly consider the evidence against Win, as well as her proffered defenses. Accordingly, her motion to sever should be denied.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court deny defendant Win's Motion to Sever.

Dated: August 8, 2018

Respectfully Submitted,

ERICA H. MacDONALD
United States Attorney

*s/ Melinda A. Williams*

BY:  MELINDA A. WILLIAMS
Assistant United States Attorney
Attorney ID No. 491005DC

LAURA M. PROVINZINO
Assistant United States Attorney
Attorney ID No. 0329691

United States Attorney's Office
300 South Fourth Street, Suite 600
Minneapolis, MN  55415
Telephone: 612-664-5600