1
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
2

3    ------------------------------------------------------------
                                    )
     United States of America,      )   File No. 17cr107(11)
4                                    )            (DWF/TNL)
             Plaintiff,             )
5                                    )
     vs.                            )   St. Paul, Minnesota
6                                    )   September 13, 2018
     Bhunna Win,                    )   11:10 a.m.
7                                    )
             Defendant.             )
8    ------------------------------------------------------------

9
              BEFORE THE HONORABLE DONOVAN W. FRANK
10              UNITED STATES DISTRICT COURT JUDGE
                    **(CHANGE OF PLEA HEARING)**
11

12   APPEARANCES
     For the Plaintiff:          United States Attorney's Office
                                 Melinda Williams, AUSA
13                               300 South 4th Street, Suite 600
                                 Minneapolis, Minnesota 55415
14
     For the Defendant:          Murray Law LLC
15                               JaneAnne Murray, Esq.
                                 310 South Fourth Avenue
16                               Minneapolis, MN 55415

17   Court Reporter:             Lynne M. Krenz, RMR, CRR, CRC
                                 Suite 146
18                               316 North Robert Street
                                 St. Paul, Minnesota 55101
19
     Interpreter:                Paul Littana, Thai Interpreter
20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2                     IN OPEN COURT

 3              (Defendant present.)

 4              THE COURT:  Why don't we first have Ms. Sampson

 5      swear in the interpreter, please.

 6              MS. SAMPSON:  Please raise your right hand.

 7              (Interpreter sworn.)

 8              THE INTERPRETER: I do.

 9              THE COURT:  Why don't we then have introductions

10      of Counsel.  We can start with U.S. Attorney's Office and go

11      over to Defense Counsel.

12              MS. WILLIAMS:  Good morning, Your Honor.

13              THE COURT:  Good morning.

14              MS. WILLIAMS:  Melinda Williams for the United

15      States.

16              MS. MURRAY:  Good morning, Your Honor, JaneAnne

17      Murray for Ms. Win.  And Ms. Win is seated at the defense

18      table.

19              THE COURT:  And good morning to each of you.

20              And Ms. Bhunna Win, why don't you -- can you come

21      up to the table with your Counsel -- podium with your

22      lawyer, please.

23              My name is first name Donovan, last name Frank.  I

24      am the assigned Judge to the case.  Each case is its own

25      case.  But I'm more familiar with these cases than most
```

3

 1    because I've already taken -- I've lost count, but right

 2    around 30 guilty pleas in the circumstances of this case

 3    from other Defendants, some of whom are in custody, some of

 4    whom are not.  And so I'm generally familiar with the

 5    background of the case.

 6            In a moment Ms. Sampson will give you the oath

 7    that every witness and Defendant takes.  And then you and I

 8    will be discussing what's called a plea agreement and

 9    sentencing stipulations.

10            And also, I'll be discussing with you your

11    constitutional rights.  And it's only after we've done both

12    of those things that I'll formally ask you to enter a plea

13    in the case.

14            As your lawyer knows, every step of the way you

15    can stop and talk privately to her, or whether you want to

16    stop, or she wants you to stop.

17            And as your -- as the lawyers in the room know,

18    every step of the way you have the right to ask me

19    questions.

20            And so, with that in mind, I'm going to have Ms.

21    Sampson give you the oath.

22            MS. SAMPSON:  Please raise your right hand.

23            (Defendant sworn.)

24            THE DEFENDANT:  (Through Interpreter)  I swear.

25            THE COURT:  You can lower your hand.  If you'd

1      please state your full name.

2                  MS. MURRAY:  Say your name.

3                  THE DEFENDANT: (Through Interpreter) Bhunna Win.

4                  THE COURT:  And your date of birth?

5                  THE DEFENDANT:  (In English) November 9, 1967.

6                  THE COURT:  You appear in court with your attorney

7      this morning.  Have you had enough time to discuss your case

8      with your lawyer?

9                  THE DEFENDANT: (Through Interpreter) Yes, that's

10     correct.

11                 THE COURT:  Are you satisfied so far in your case

12     with her services and representation?

13                 THE DEFENDANT: (Through Interpreter) I am

14     satisfied.

15                 THE COURT:  I'm now going to ask you a couple

16     questions that I ask every Defendant in every case -- in all

17     cases.

18                 And I want to make sure that you know I do that in

19     every case so you don't think, but why is the Judge asking

20     this?  Does he think I'm under the influence or high on some

21     alcohol or drugs?  I don't suspect anything.

22                 But to make sure that nothing is happening today

23     that would get in the way of you understanding today's

24     hearing with the help of your lawyer, I'll ask you, today,

25     at this time, are you under the influence of any alcohol or

1      drugs?

2                  THE DEFENDANT: (Through Interpreter) no.

3                  THE COURT:  Now I'm going to ask a question of the

4      lawyers.

5                  Do we have a signed plea agreement?

6                  MS. MURRAY:  Yes, we do, Your Honor.

7                  THE COURT:  May I have that, please?

8                  I'm now also going to ask a questions of the

9      lawyers.  And this is something I ask in every case.  And

10     I'll do my best to explain why right now.

11                 Well, maybe I'll ask the question first of the

12     lawyers.

13                 Are there any changes on this signed agreement

14     compared to the unsigned agreement I received before today's

15     hearing?

16                 MS. MURRAY:  I don't believe so, Your Honor.

17                 MS. WILLIAMS:  No, Your Honor.

18                 THE COURT:  Okay.  Now I can tell you, Ms. Vin

19     (sic), that the reason I -- or I asked that -- Win, I'm

20     sorry, I -- I got to tip my glasses, the V versus W.

21                 The reason I ask that in every case, is to the

22     credit of the U.S. Attorney's Office here in Minnesota, and

23     to criminal defense lawyers in Minnesota, because what they

24     do here isn't done in other places and across the

25     country.

1          When they believe they have an agreement -- even

2     though it isn't binding on anybody until we come to court,

3     like we are today and we go through the agreement -- when

4     they believe they have agreement, they send an unsigned copy

5     to the Judge.

6          They do that for a couple of very important

7     reasons.  Number one, they have the right to expect, as you

8     do, that I would have read it before I came through the

9     door, and I did.

10          And secondly, they have a right to expect, as you

11    do, that if I didn't understand something, or maybe

12    something bothered me, I -- they have a right to expect, as

13    you do, I wouldn't sit here and be quiet.  I would ask

14    questions, and we would talk in the open courtroom.

15          And so that has the very good effect of reducing

16    surprises and issues at the time of sentencing, which most

17    people don't like if they can avoid that.  So that's why I

18    asked that question if there had been any changes, because

19    sometimes there are.

20          In this case you heard both lawyers say there were

21    no changes compared to the unsigned copy I received.

22          So I'm going to go over this agreement with you

23    now.  Before I begin, I'm up here a ways, but is that your

24    signature on the back page?

25          THE DEFENDANT: (Through Interpreter) That's

1    correct.

2              THE COURT:  Did anybody force you or threaten you

3    to sign this?

4              THE DEFENDANT: (Through Interpreter) No one.

5              THE COURT:  Now, other than what the Government

6    has agreed to do, and we know what this is because it's here

7    in the agreement, has anybody else made any other promises

8    to you that caused you to come in here today to enter a plea

9    of guilty?

10             THE DEFENDANT: (Through Interpreter) No one.

11             THE COURT:  All right.  I'm going to go through it

12   with you now.  And I'll follow it in the order that it's

13   written, with a couple of exceptions.  And I follow the same

14   procedure in every case.

15             There's a Paragraph 2 called Factual Basis.

16             I will come back to that if and when you plead

17   guilty and then we'll discuss the facts of the case.

18             There -- there's also a -- a provision in here,

19   and I'll move to it in just a minute.  The -- waive -- let's

20   see, bear with me just one moment.

21             Yeah.  There's a fancy phrase on Page 3 that

22   really usually -- as you see in every plea agreement, Waiver

23   of Pretrial Motions.

24             I'll discuss that with you when you and I go

25   through your constitutional rights.

1          Otherwise, I'm going to walk right through this

2     agreement with you now.

3          I'm not asking you yet to plead guilty.  But do

4     you understand under this agreement you're agreeing to plead

5     guilty to what's called Count 6 of the -- and it's what's

6     called a third superseding indictment.  And if I use the

7     word indictment now for the rest of the hearing, that's what

8     I'm referring to.

9          And that charges you with running what's called an

10    unlicensed money transmitting business in violation of

11    federal law.

12         Do you understand that's the charge that's part of

13    this plea agreement?

14         THE DEFENDANT: (Through Interpreter) Yes.

15         THE COURT:  Now, for the record, I'm going to go

16    over to the top of Page 4, Paragraph 4.  There there's a

17    two-word phrase, Statutory Penalties.

18         Another way I could explain that to you is to say

19    to you, What are those penalties the United States Congress

20    passes?  And -- because they set the maximum term of prison

21    in every case that's -- and in some cases, not this case, in

22    some cases, they set mandatory minimums that I must follow.

23    There's no mandatory minimum.

24         In other words, in some cases, they depending on

25    the charge, they'll say, Judge, you must give at least three

1     years or five years in prison.  There's no minimum here.

2     And we'll talk about that later.

3                 But do you understand there's a maximum in prison

4     of up to five years?

5                 THE DEFENDANT: (Through Interpreter)  I

6     understand.

7                 THE COURT:   There's a supervised release term,

8     and sometimes people use the word probation.  That whether

9     there's any prison time imposed by me or not in a case,

10    someone can be on probation or supervised release on

11    certain conditions in the United States.  Do you understand

12    that?

13                THE DEFENDANT: (Through Interpreter) Yes.

14                THE COURT:  Then there's a fine of up to $250,000.

15    Or what's called twice the gross gain to you, or the gross

16    loss to any person.  Do you understand that?

17                THE DEFENDANT: (Through Interpreter) Yes.

18                THE COURT:  And, not unique to this case, I'll be

19    focusing on the restitution that's listed there.  And we'll

20    talk more about that, because that's part of this agreement.

21                 Because usually a priority of the U.S. Attorney's

22    Office and the Court is to look -- be more concerned about

23    restitution than imposing a separate fine, so.

24                But it is my responsibility to evaluate that

25    restitution issue.  Do you understand that?

1          THE DEFENDANT: (Through Interpreter)  Yes.  I

2     understand.

3          THE COURT:  Then there's something here that is in

4     every plea agreement, because it's mandated by federal law,

5     although sometimes Defendants wonder why the Judge is

6     talking to somebody about a $100 assessment in a felony.

7          It's the one assessment that a federal judge must

8     impose in every federal felony, because it goes into what's

9     called a fund for victims of crimes.  Do you understand

10    that?

11         THE DEFENDANT: (Through Interpreter)  Yes.  I

12    understand.

13         THE COURT:  Now this phrase, Revocation of

14    Supervised Release.

15         If you were living here in the United States

16    during a term of supervised release, which we've talked

17    about, could be up to three years, and if you would violate

18    the terms of that release, one of my options would be to

19    send you to prison, even if you hadn't been there, or to

20    send you back to prison, if you served a sentence.  Do you

21    understand that?

22         THE DEFENDANT: (Through Interpreter)  I

23    understand.

24         THE COURT:  And we'll talk more about this at

25    sentencing.  But our statistics show us and tell us that two

1   out of three people standing where you're standing, no

2   matter what the sentence is, if they comply with their

3   condition of supervised release, never return on a new crime

4   or violation.  I always say that, because that's more

5   positive than negative.

6            Now I'll move on to a phrase in Paragraph 6,

7   Guideline Calculations.

8            And it begins on Page 4, continues onto Page 5,

9   and concludes on Page 6.

10           And if you want to look at a book that I'm holding

11   up here.  And your lawyer went through a group of rules with

12   you.  And she may not have used this book, because they

13   change the color of the cover every year.  This goes back a

14   couple years, so it's the blue cover.  And sometimes they

15   have gray and they have all different colors.

16           But this is what's called the sentencing

17   guidelines and all the rules.  And the best way I can

18   explain that is the United States Congress created what's

19   called the United States Sentencing Commission.

20           And they told these people to rate and rank every

21   federal crime on how serious they believe it is, and give it

22   a name and a number.

23           And then they also told them to set up some rules

24   on, well, no matter what the crime is, depending on what the

25   person admits to, What are the rules that increase or

1    decrease what's called the starting point for any sentence?

2          So -- and now I'm going to go through that with

3    you here on Page -- it starts on the top of Page 5.

4          And there it says, The parties agree that the base

5    offense level -- and that's the word that's assigned to

6    every federal crime.  That's where you start, is 8 plus 14,

7    totalling 22.  Which is based in part on the value of the

8    money that was transferred or transmitted.

9          And that Number 22, and that comes from rules in

10   the guidelines, that doesn't mean 22 years or 22 months, it

11   means that seriousness rating on how serious -- because

12   those numbers can go from zero to well over 40 or 50.  I

13   think the highest one has been 60 in my 20 years here.

14         So that ranking is 22.  Do you understand that?

15         THE DEFENDANT: (Through Interpreter)  I

16   understand.

17         THE COURT:  Then there's a phrase Specific Offense

18   Characteristics.

19         Another way I can explain that to you is to say,

20   What are those rules in those guidelines that increase or

21   decrease that starting point of 22?

22         So here it states, The parties agree that the

23   offense level should be increased by four levels.

24         And what's that really based upon is they look at

25   the underlying circumstances of kind of where the money came

1    from, how it was generated.  It's a rule in the guidelines,

2    but that causes an increase of four levels.  Do you

3    understand that?

4            THE DEFENDANT: (Through Interpreter)  I

5    understand.

6            THE COURT:  And then -- and actually, a Judge

7    would expect to see this addressed in here, because that's a

8    rule that really applies when there's a crime like this, I

9    have to look at the underlying circumstances.

10           So here -- then the next phrase may not seem

11   important to you.  It says, The parties agree that other

12   than acceptance of responsibility, and we'll talk about that

13   in just a minute, No other Chapter 3 rules or adjustments

14   apply.

15           Well, that's important to a judge, because that

16   tells me that your lawyer and the Prosecutor took the time

17   to look at the rules.  And with what they know today, they

18   don't know of any other rules that increase or decrease that

19   number, other than one that we're going to talk about in

20   just a moment.  Do you understand that?

21           THE DEFENDANT: (Through Interpreter)  I

22   understand.

23           THE COURT:  Now Acceptance of Responsibility.

24   What -- here's what that means.

25           And if you plead guilty in just a few minutes,

1    testify truthfully during your plea, and cooperate with the

2    probation department as they complete what's called a

3    Presentence Investigation Report, which outlines the crime,

4    and then it would be details about who you are as a human

5    being -- because you and your lawyer will sit down with the

6    probation officer between now and any sentencing date.

7            If all those things happen, the Government will

8    recommend a three-level reduction from the -- what's called

9    the adjusted offense level, so it reduces it.  Do you

10   understand that?

11           THE DEFENDANT: (Through Interpreter)  I

12   understand.

13           THE COURT:  Then there's a phrase in here that

14   sometimes is difficult to -- for any judge to explain to a

15   defendant.  And it doesn't happen very often, but it says,

16   you also can -- you cannot engage in any conduct that is

17   inconsistent with acceptance of responsibility between now

18   and the time of sentencing.  And so that rarely happens.

19           I can give you an example of what would be conduct

20   where you would lose your acceptance of responsibility.  It

21   rarely happens, because for that to happen you would have to

22   ignore the advice of your lawyer.  And most defendants don't

23   do that.

24           I've had two that -- that happened twice in the

25   last few years here in this courtroom.

1    A defendant was standing where you were standing

2    and they were in custody.  So we knew they were going -- he

3    was going back to the jail in Sherburne County.

4         Well, he must have forgot -- he pled guilty to a

5    large -- what's called distribution of methamphetamine case.

6    And he forgot, I think, that he had a large suitcase of meth

7    that nobody had found in a -- in a locker that nobody knew

8    about.

9         So even though most defendants know that all phone

10   calls are taped from most jails and prisons, unless you're

11   talking a lawyer, he called his girlfriend and tried to talk

12   in code of some kind.  It didn't work, because police ended

13   up with a large suitcase of methamphetamine.

14        And he lost his acceptance of responsibility

15   because that would be conduct inconsistent with accepting.

16        I had another case where a young woman was

17   standing where you were standing not in custody.  And after

18   she pled guilty to what's called telemarketing fraud, she

19   drove over to Hudson, Wisconsin and opened up the same

20   business between the plea and the sentencing.  And not only

21   then did she lose the plea agreement, but I was obligated to

22   do a warrant and have her arrested.

23        So it rarely happens but that would be two

24   examples of conduct inconsistent with pleading guilty and

25   acceptance.

1        So moving on, if -- going to top of Page 6,

2    Criminal History Category.

3        On the one hand, you and your lawyer, and the

4    Government's lawyer, they get to wait and see what the

5    probation officer comes up for your criminal history.  And

6    then you get to argue whatever you like at court.

7        However, they must make their best evaluation of

8    what they believe it to be so they can tell you, tell me,

9    what the guideline advisory prison sentence is.  Because if

10   you have a criminal record, depending on what it is, that

11   can affect the sentence.

12       Here, they believe you're at the lowest level or

13   Category I.  Do you understand that?

14       THE DEFENDANT: (Through Interpreter)  I

15   understand.

16       THE COURT:  So if you're at that lowest level

17   Category I, and you would have what's called the suggested

18   offense level of 23, the recommended or advisory sentence

19   would be 46 to 57 months.  Do you understand that?

20       THE DEFENDANT: (Through Interpreter)  Yes.  I

21   understand.

22       THE COURT:  Now, I think you do, because you

23   didn't have a -- what I'd call a -- you didn't have a

24   panicked look on your face.  And what's the Judge talking

25   about?

1          Sometimes a defendant is thinking, Well, he's

2     asking me if I'll serve at least that much time?

3          Of course, that's not what I asked.  I asked if

4     all these -- excuse me -- assumptions are correct, that

5     would be the advisory sentence.  And we'll talk more about

6     that in just a minute.

7          The fine range would be anywhere from a low of

8     $20,000 to $1,498,000 and change.  And, again, my focus will

9     be on restitution, not the fine.

10          The supervised release term of one to three years.

11    Do you understand that?

12          THE DEFENDANT: (Through Interpreter)  Yes.  I

13    understand.

14          THE COURT:  Now, I'll talk to you about a -- the

15    last paragraph there called 6I, called Sentencing

16    Recommendation and Departures.

17          On the one hand, it's the sure sign of a fair plea

18    agreement to everybody on all sides of a case.

19          However, it's the most misunderstood part of a

20    plea agreement, not by anybody here in the courtroom, but

21    when the public -- what I mean by that, when the public

22    reads or hears about a case, and they hear the word plea

23    agreement, they assume that everybody, including the Judge,

24    agrees on what the sentence should be.  I haven't had a case

25    like that in years.

1          And so why do I say this?  This says, The parties,

2     which means, obviously you're one of the parties, reserve

3     the right to make a motion.  And then the two legal phrases

4     are departure or variance, which simply, but importantly

5     means, you're free to argue with the help of your lawyer, as

6     is the Government, for any sentence you think is fair.

7     Whether it's within the guidelines, more prison time, less

8     prison time, no prison time, both parties are free to

9     argue for whatever they think is fair.  Do you understand

10    that?

11          THE DEFENDANT: (Through Interpreter)  I

12    understand.

13          THE COURT:  Now, here's the most important part of

14    that, and this is true pretty much in all cases.

15          When the sentencing hearing is over, so everybody

16    will know what I had decided.  Whether you and your lawyer

17    are shaking your head saying, I think the Judge either

18    wasn't fair with me.  Or he should have given me prison

19    time.  Or he gave me too much prison time.

20          Or maybe the Prosecutor's thinking just the

21    opposite.  The Judge didn't treat it seriously enough.  He

22    should have given prison time.  Or should have given more

23    prison time.

24          Both parties -- both of you can argue what you

25    think the fair and right thing for me to do is, but neither

1    side can back out of the plea agreement.  Do you understand

2    that?

3              THE DEFENDANT: (Through Interpreter)  I

4    understand.

5              THE COURT:  Because that rule applies the same to

6    both parties.  So then --

7              Now I'll move over to Page 7.  I'll go down to

8    Paragraph 9, called Restitution and Disclosure of Assets.

9              Part of the -- part of the agreement, and that's

10   really true in all cases where there's any issue of what's

11   called restitution.

12             You agree to pay restitution, and you agree to

13   completely disclose -- you agree to -- you agree to disclose

14   any and all assets that you have and any interest you have

15   in property or anything so the Government can say, Look at.

16   We know everything she owns or doesn't own, or any interests

17   she has in property.  Do you understand that?

18             THE DEFENDANT: (Through Interpreter)  I

19   understand.

20             THE COURT:  In other words, it's -- so that -- and

21   it rarely happens, frankly, but sometimes we'll get to a

22   sentencing, and the Government will say, We have located

23   other property, or assets that he or she didn't disclose to

24   us.  That usually doesn't happen.

25             But now I'll move over to Paragraph 10, there's a

1    fancy word there -- or top of Page 8 called Forfeiture.

2            And it states here -- and then I'll be specific in

3    a minute.  It says that you agree to give up or forfeit to

4    the United States any property, which could be real or

5    personal property, that is related or involved in violation

6    of Count 6 of this indictment.  Or property that can be

7    traced and say, There's property that was a result or

8    benefitted -- connected to the crime.

9            And do you understand that, in fact, part of this

10   plea agreement is -- and we'll discuss about it now, I won't

11   go through each one, but I'm going to reference them in a

12   moment.

13           And that you and your attorney, and maybe with the

14   help of others, and the Government, have set forth what

15   those assets and properties are.  And they're in

16   Paragraph 10.  Do you understand that?

17           THE DEFENDANT: (Through Interpreter)  I

18   understand.

19           THE COURT:  Now I'm going to ask each Counsel

20   first.

21           I'm looking at Paragraphs A through L, starting on

22   Page 8 and going through 9.

23           And I'll ask Defense Counsel first, have these all

24   been discussed with your client?  And do you feel she

25   understands that those are the -- the assets that are

1    subject to forfeiture?

2              MS. MURRAY:  Yes, Your Honor.  We've been through

3    them.

4              I will say, with respect to Paragraph L, the

5    government has agreed that they will provide either a

6    mirror image of those electronics to my client, or at least

7    give her copies of personal folders, photos, videos, et

8    cetera.

9              So that is something that's been separately agreed

10   between us and the Government.

11             MS. WILLIAMS:  Yes, Your Honor.  Let me say the

12   discussion with Defense Counsel is the same discussion we've

13   had throughout this case, which is we're not going to return

14   the devices.

15             And in terms of a mirror image, in so as far as

16   there are things on there that we don't want to give back.

17   We don't do that.

18             But we'll work with the Defense, as we've done

19   with all the Defendants in this case, to identify family

20   photos, personal tax information, that sort of thing, make a

21   disk and give it back to the Defendant.

22             THE COURT:  And well, that must have been -- that

23   must be being worked out, because to the extent it's

24   relevant, I haven't had one Defense Counsel, or probation or

25   anybody else contact me saying, Look at, we've reached a

1   problem because they don't think they're getting back

2   everything that they were hoping --

3          So I'm assuming it's all being worked out to the

4   satisfaction of everyone, because I haven't had anybody

5   contact me.

6          Now that I've said that, somebody probably will

7   contact me.

8          MS. WILLIAMS:  Well, knock on wood.  I think we're

9   getting along so far.

10          THE COURT:  Yeah, so.

11          But, and Ms. Win, I'm going to ask you, do you

12   understand that in this Paragraph 10, we've gone -- they've

13   listed out specifically both the monies involved that -- and

14   the jewelry involved that will be -- that you're agreeing

15   that are going to be forfeited to the Government.  Do you

16   understand that?

17          THE DEFENDANT: (Through Interpreter)  I

18   understand.

19          THE COURT:  And then it ends by saying at the

20   bottom of Page 9, Payment of a money judgment forfeiture --

21   and that's kind of that fancy phrase, is part of the

22   agreement.  And it says that you as a Defendant consent to

23   entry of a money judgment in the amount of $525,000.  And

24   then they lay out that they -- they started with the amount

25   of $749,000 and change, less currency seized -- so giving

```
1    credit.  And the approximate value of the jewelry seized, so

2    they can subtract those from the amounts there.  So that's

3    a -- do you understand that?

4              THE DEFENDANT: (Through Interpreter)  I understand

5    that.

6              THE COURT:  And then moving over to the top of

7    Page 10 it says that agree to pay $525,000 in satisfaction

8    of the agreed-upon money judgment prior to the entry of the

9    guilty pleas.

10             So -- can I check in with Counsel on that?

11             MS. WILLIAMS:  Yes, Your Honor.  We got it

12   yesterday.

13             THE COURT:  All right.

14             MS. WILLIAMS:  All good.

15             So the Defendant has, with these -- with

16   forfeiting out what is listed in Paragraph 10, she's

17   satisfied kind of her all-in money number in this case.

18   She's already done that.

19             MS. MURRAY:  Your Honor, I just want to clarify

20   that --

21             THE COURT:  All right.

22             MS. MURRAY:  Our understanding is that this money

23   will be going towards the victims in the case.  So that

24   although it's labelled a forfeiture, it also effectively

25   becomes a restitution.
```

1          And my understanding from conversations with the

2     Prosecutor that the Government will not be seeking

3     additional sums in restitution from Ms. Win.  That -- that

4     this amount will satisfy that obligation.

5          MS. WILLIAMS:  That is correct, Your Honor.

6          And we've been working closely with pretrial on

7     all of that, as we expect to have a number of victims

8     seeking restitution in the case.

9          THE COURT:  And do you believe, Counsel, that your

10    client, Ms. Win also understands that, as you've just laid

11    it out there?

12         MS. WILLIAMS:  Yes, Your Honor.  I believe she

13    does.

14         THE COURT:  And I assume, maybe, it's already been

15    answered with the rest of this paragraph, but Ms. Win, do

16    you understand now, now they've just verified this has been

17    paid yesterday, that you, as part of this agreement, aren't

18    contesting or challenging the -- this amount of money being

19    paid over to the Government?  And, obviously, your lawyer

20    said, with the understanding that the victims, obviously,

21    will be receiving, based upon -- and if there's any

22    disagreement, then I'm responsible to evaluate that, but

23    I'm -- do you understand that?

24         THE DEFENDANT: (Through Interpreter)  I

25    understand.

25

1          THE COURT:  Moving on to Page 11, I'll be

2     discussing the trial issue in a few moments on the

3     constitutional rights.

4          But, going to Paragraph 1, do you understand that

5     by entering this plea of guilty today, that you're also, as

6     part of this plea agreement, you're giving the right up to

7     appeal the issues in the case, including, any sentence

8     imposed?  Do you understand that?

9          THE DEFENDANT: (Through Interpreter)  Yes.  I

10    understand.

11         THE COURT:  And I'll just indicate to you, as I do

12    in most cases.

13         On the one hand, we'll see this in almost -- in

14    90 percent plus of all plea agreements.

15         However, and you can ask your lawyer this in

16    private, my responsibility in imposing a sentence is the

17    same.  I'm not allowed to skip the rules and say, Well,

18    there's been a waiver of sentence, therefore, I can just

19    ignore the law and what's a fair sentence.

20         My responsibility is the same.  And there won't be

21    any statistics in our district, on me or any other judge

22    that will say that, Well, when there's a waiver like this,

23    the judge goes higher with the sentence.

24         Because my -- even though it's properly here and

25    we see it in most plea agreements, that my responsibility is

1    the same.  Do you understand that?

2              THE DEFENDANT:  (Through Interpreter)  Yes.  I

3    understand.

4              THE COURT:  Now there's a fancy phrase here, in

5    Paragraph 13, Waiver of Venue.  That's simply but

6    importantly means, that this case could have, by agreement

7    of all the parties, been done here, other states in the

8    country, Thailand.  And you're just agreeing that this is

9    a -- this is proper place for jurisdiction for this case to

10   proceed.  Do you understand that?

11             THE DEFENDANT:  (Through Interpreter)  Yes.  I

12   understand.

13             THE COURT:  And then moving to Page 12, the -- and

14   there's this -- I want to get to the more important thing of

15   what's called Collateral Consequences.

16             But under this fancy phrase on 14 FOIA Request.

17   Do you understand that under this Freedom of Information Act

18   that you also give up your rights to obtain directly or

19   through officers any and all information about the

20   investigation or prosecution of this case.  And you've

21   probably received a number of things already, but you're

22   giving additional things up.  Do you understand that?

23             THE DEFENDANT:  (Through Interpreter)  Yes.  I

24   understand.

25             THE COURT:  Now Collateral Consequences.  I'm not

1    saying there will or there won't be.  And I won't be making

2    that decision, and nobody in this room will be making it.

3           But sometimes, depending on someone's immigration

4    status, that can include, once someone -- immigration learns

5    of a federal felony conviction, whether that could

6    potentially result -- I'm not saying it will or it won't.

7    But it could result in a person's removal, or deportation

8    from the United States.  Do you understand that?

9           THE DEFENDANT: (Through Interpreter)   I

10   understand that.

11          THE COURT:  And that doesn't mean that somebody in

12   this room recommends or decides anything.  But people just

13   look at records of everybody.  And so -- and they don't

14   consult me either.

15          Now before you and I discuss your constitutional

16   rights and I take your plea, do you have any questions of

17   me about any part of this plea agreement, whether you and I

18   just discussed it, or you were hoping to ask me something

19   about the plea agreement?

20          THE DEFENDANT: (Through Interpreter) I don't have

21   any questions.

22          THE COURT:  Does the Government?

23          MS. WILLIAMS:  Nothing from the Government.

24          THE COURT:  Does the Defense?

25          MS. MURRAY:  Nothing, Your Honor.

1        THE COURT:  Ms. Win, you are presumed innocent of

2   this charge.

3        If you plead guilty in just a few moments, you

4   give up your right to be presumed innocent.  Do you

5   understand that?

6        THE DEFENDANT: (Through Interpreter) Yes.

7        THE COURT:  You have the right to have your lawyer

8   represent you in front of a trial.  And we'll talk about

9   what I mean by trial.

10       But since there's not going to be a trial, you're

11  giving -- even though she's going to be with you every step

12  of the way for this plea, for what's called the Presentence

13  Investigation Report, and sentencing, you're giving up the

14  right to have a lawyer represent you at trial, because

15  there's going to be no trial.  Do you understand that?

16       THE DEFENDANT: (Through Interpreter) Yes.

17       THE COURT:  You have the right to remain silent

18  and what's called the right against self-incrimination.

19       You give that right up by pleading guilty.  Do you

20  understand that?

21       THE DEFENDANT: (Through Interpreter) Yes.

22       THE COURT:  Now, in the United States, you have

23  the right to demand, I've used this phrase -- well, first of

24  all before what I start defining a trial, you're also giving

25  your right up to demand a speedy trial, because there's

1    going to be no speedy trial -- or no trial at all.  Do you

2    understand that?

3              THE DEFENDANT:  (Through Interpreter)  I

4    understand.

5              THE COURT:  You have a right to demand a trial,

6    there would be 12 people sitting over here.

7              And in the United States, under our Constitution,

8    the burden of proof is on the Government, not on you.  You

9    don't have to prove you didn't do it.  You don't have to

10   prove you're innocent.

11             The Government must prove by what's called proof

12   beyond a reasonable doubt that you're guilty of the offense.

13   And the vote must be 12 to 0, it can't even be 11 to 1.

14             So today that means by pleading guilty, you give

15   the right up to demand a jury trial of 12 people.  Do you

16   understand that?

17             THE DEFENDANT:  (Through Interpreter)  I

18   understand.

19             THE COURT:  At that trial, even though you don't

20   have to do anything, as the Government would call each

21   witness, you and your lawyer could, wouldn't have to,

22   question each witness, usually called cross-examination.

23             And then when the Government was done presenting

24   their case, they would turn to you, to your lawyer, to me,

25   to the jury and say, We rest our case.

1          Then you would have other decisions to make.

2          Should I call witnesses?  You don't have to.  And

3    then you'd have a big decision to make.  Should I testify

4    knowing I'll likely be cross-examined?  Or should I not

5    testify usually knowing two things.

6          One, the Government can never call you as a

7    witness.

8          And secondly, the Prosecutor can't get up at the

9    end of the trial and say, Now you know, Ms. Win is guilty

10   because she hid behind the Constitution.  She wouldn't get

11   up there and tell you her story.  Usually a prosecutor can't

12   do that.

13         So that means today you're giving those rights up

14   that come along with the trial, because there's going to be

15   no trial.  Do you understand that?

16         THE DEFENDANT: (Through Interpreter)  I

17   understand.

18         THE COURT:  Now, we've talked about the sentencing

19   waiver.  Let me talk about two other rights that you and

20   really every other Defendant gives up.  And this also

21   relates to that phrase Waiver of Pretrial Motions.

22         If you plead guilty in just a moment or two, you

23   can't come back to me and say, Judge, I'm not guilty.  I may

24   have told you I was, I'm not.  I'm -- I'm going to fight

25   that now and I'm going to appeal it.  You give that right

```
1    up.  Do you understand that?

2              THE DEFENDANT: (Through Interpreter)  I

3    understand.

4              THE COURT:  The other rights you give up, and

5    that -- this relates directly to that waiver of pretrial

6    motions.

7              If you plead guilty in just -- because we're about

8    there, you can't come back to me or a higher court later on

9    and say, Judge, of course I'm guilty.  I don't -- I was

10   guilty back when I pled guilty in September, I'm still

11   guilty.  But I should not have been in your courtroom.

12   Because before I got there, my constitutional rights were

13   violated and that's how I got caught.  And now I'm going to

14   fight that.

15             Well, if and when a Defendant says that, they

16   could mean a wiretap, a search warrant, a statement taken,

17   an arrest, a seizure.

18             The important thing is, by pleading guilty, you

19   give the right up to make any such claim to me or a higher

20   court.  Do you understand that?

21             THE DEFENDANT: (Through Interpreter)  Yes.  I

22   understand.

23             THE COURT:  Before I take your plea of guilty, do

24   you have any questions of me about your constitutional

25   rights?
```

1          Whether it's something we've just talked about or

2     you were hoping to ask me about?

3          THE DEFENDANT: (Through Interpreter) I don't.

4          THE COURT:  Any inquiry by Counsel?

5          MS. MURRAY:  No, Your Honor.

6          MS. WILLIAMS:  No, Your Honor.

7          THE COURT:  Now, I'm going to formally ask you as

8     to Count 6, of what we've referred to as a third superseding

9     indictment, which charges you with running an unlicensed

10    money transmitting business, do you plead guilty or not

11    guilty?

12         THE DEFENDANT:  (Through Interpreter)  Guilty.

13         THE COURT:  Do you understand by entering that

14    plea, you give up those rights we just discussed, including

15    your right to go to trial?

16         THE DEFENDANT: (Through Interpreter)  Yes.  I

17    understand.

18         THE COURT:   Do you make any claim to me, today,

19    Ms. Win, that, Hey, I'm not guilty.  I claim I'm innocent?

20    Do you make any claim today that you're innocent of this

21    charge?

22         THE DEFENDANT: (Through Interpreter) No.

23         THE COURT:  Going back to the facts of the case --

24    and there won't be any surprise questions from me.  I'll

25    work right off of Paragraph 2 of your plea agreement.  And

1    I'll go through that with you now.

2            It states here, From around a time period in

3    January of 2014 and continuing through your arrest in May of

4    2017, here in the District of Minnesota, and elsewhere, that

5    you did knowingly either conduct, control, manage,

6    supervise, direct and own all or part of one or more of

7    what's called money transmitting businesses.  And that --

8    and you didn't comply with the money transmitting business

9    registration.

10           In other words, there are certain laws that

11   require you to register and file.  And that you're admitting

12   that you did not do that.  Is that true?

13           THE DEFENDANT: (Through Interpreter)  True.

14           THE COURT:  And then the fancy phrase that you

15   Affected Interstate Commerce, that simply but more

16   importantly means, that there was some conduct that didn't

17   start and finish here in Minnesota.  Whether that was

18   online, internet, things between states or countries.  And

19   agree with that, do you not?

20           THE DEFENDANT: (Through Interpreter)  Yes.

21           THE COURT:  Then moving on it says, Beginning at

22   least as early as January of 2014, and continuing through

23   May 24th of 2017, that you operated a business in San Diego

24   called Excel Intertrade out of your personal residence.  Is

25   that true?

1          THE DEFENDANT: (Through Interpreter) Yes.

2          THE COURT:  Then it says that during that time

3     period you used Excel Intertrade and other bank accounts in

4     the name of Excel Intertrade, as well as your personal

5     accounts to operate what was your unlicensed money

6     transmitting business.  Did that happen, Ma'am?

7          THE DEFENDANT: (Through Interpreter) Yes.

8          THE COURT:  Then it says, neither you nor any

9     entity that you controlled, including Excel Intertrade, were

10    ever licensed to engage in the business of providing money,

11    transmission services in California, Minnesota or with the

12    United States Department of Treasury, what's called

13    financial crimes enforcement network.  Is that true, you

14    were never licensed?

15          THE DEFENDANT:  (Through Interpreter)  Yes.

16          THE COURT:  Then it states that the business

17    would transmit cash from more than one person in more than

18    one day in an amount greater than $1,000, and you did not

19    have a license to do that.  Is that true?

20          THE DEFENDANT: (Through Interpreter) Correct.

21          THE COURT:  Then it says that you primarily

22    assisted in transmitting money for two co-conspirators that

23    turned out to be codefendants here in the cases I have --

24    and I'll just spell the last names of each,

25    Y-U-V-A-S-U-T-A.  And L-E-E-L-A-R-U-N-G-R-A-Y-A-B.  Is that

1   true?

2           THE DEFENDANT: (Through Interpreter)  Yes.

3           THE COURT:  Then it says the total amount of money

4   transmitted by you without a license to these individuals

5   and others involved in the case, was at least $749,283.97.

6   Is that accurate?

7           THE DEFENDANT: (Through Interpreter)  Yes.

8   Correct.

9           THE COURT:  And then the next phrase a judge

10  expects to see in almost every case.  It says that you

11  participated in this, you -- it was a knowing, voluntary,

12  and intentional participation.  Is that true?

13          THE DEFENDANT: (Through Interpreter) Yes.

14          THE COURT:  And you might wonder why I said that.

15          Well, because -- because some people say, Well, I

16  was threatened or forced, or was accidental or a mistake,

17  but you're not -- you're not claiming that?

18          THE DEFENDANT: (Through Interpreter)  Correct.

19          THE COURT:  Any additional questions on the

20  factual basis by the Government?

21          MS. WILLIAMS:  No, Your Honor.

22          THE COURT:  By the defense?

23          MS. MURRAY:  No, Your Honor.

24          THE COURT:  The Court finds that Ms. Win has

25  knowingly and voluntarily entered this plea.

1          I also find that there's clearly a proper and

2     adequate factual basis for the plea that's she's

3     admitted, so I accept and record the guilty plea for all

4     purposes.

5          I order a Presentence Investigation Report to be

6     done at this time.

7          And I'll explain how that works, because while it

8     does not vary by judge or case in our district, it varies

9     quite a bit around the country, in both -- and not only

10    between federal courts but state courts, and I think we have

11    a very fair system, which by the way the lawyers are all

12    familiar with.

13         The Presentence Investigation will be details of

14    not just a crime, but details about who you are as a human

15    being.

16         And then you will be interviewed in the presence

17    of your lawyer.  And then when that first draft of a very

18    detailed report is sent, you and your lawyer, and the

19    Government's lawyer, see it before I do.  I don't see it.

20    It would be fine if I did, but I would tell you.

21         There's a very important reason for that.  The

22    lawyers know, and your -- and specifically your lawyer

23    knows, she can sit down and go over with you the plea

24    agreement, or the -- the Presentence Investigation.  Because

25    she knows she can call a probation officer, write them,

1    e-mail them, walk into their office and say, We have some

2    objections to make.  And sometimes they're called legal or

3    factual objections.

4              We want you to -- this is an this isn't accurate,

5    take this out, or this is -- you need more information here.

6              And the Government has the same right to do that.

7    And the probation department may agree to make changes, if

8    your lawyer requests it, or maybe not.

9              Now why have I taken the time to tell you this?

10             Well, when I get the final draft, I admit to you,

11   I don't start on the first page.

12             I flip to the back, and there will be a fancy word

13   called Addendum.  And here's what it will say, Ms. Win and

14   her lawyer object to the following paragraphs for the

15   following reasons.  Or it may say, We have no objections.

16   Which means either there never were any, or your lawyer

17   convinced the probation officer to make some changes.

18             I'll look for the same thing from the Government.

19   Because I like to have in the back of my mind, if there were

20   any objections before I read the report.

21             As soon as Ms. Sampson gets that final draft,

22   she'll call your lawyer, Government's Counsel, and say, Can

23   we agree on a sentencing time and date?  And then at that,

24   and we then almost always do.

25             And then at that time, you'll have the right to

1      say as little or as much as you want.  Sometimes Defendants

2      want certain people here, sometimes not.

3               Sometimes the Government want certain people here,

4      whether it's victims, or law enforcement, or other agents,

5      sometimes not.

6               But then at that time, you'll have a chance to say

7      anything you wish, if you want.

8               Any questions of me, Ms. Win, about anything

9      that's happened today or anything else for that matter?

10              THE DEFENDANT: (Through Interpreter) I don't have

11     any questions.

12              THE COURT:  Counsel, anything further at this

13     time?

14              MS. WILLIAMS:  Nothing further.

15              MS. MURRAY:  Nothing further, Your Honor.

16              THE COURT:  Do you need to chat with them before

17     they leave today?

18              MS. HEINO:  I already have, Your Honor.

19              THE COURT:  I came into the courtroom with the

20     intent to continue your client's release with just adding

21     one condition.  And that is that there's -- and this is true

22     in every case, a weapons restriction that she may not

23     possess a firearm, destructive device or other weapon.

24              But other than that, given her full compliance

25     with conditions, I intended to continue her release.

1          I doubt that you have any objection to that?

2          MS. MURRAY:  No objection, Your Honor.

3          THE COURT:  Government?

4          MS. WILLIAMS:  No, objection, Your Honor.

5          THE COURT:  So anything further at this time?

6          MS. MURRAY:  Nothing further from the Defense,

7    Your Honor.

8          MS. WILLIAMS:  Nothing further from the

9    government, Your Honor.

10          THE COURT:  Okay.  We are adjourned, and I'll sign

11    this so they can -- all right.  Thank you.

12          MS. MURRAY:  Thank you.  Thank you very much.

13          THE CLERK:  All rise.

14          (Court adjourned.)

15

16                    REPORTER'S CERTIFICATE

17

18      I, Lynne M. Krenz, do certify the foregoing pages of
      typewritten material constitute a full, true and correct
19    transcript of my original stenograph notes, as they purport
      to contain, of the proceedings reported by me at the time
20    and place hereinbefore mentioned.

21
                        /s/Lynne M. Krenz
22                      Lynne M. Krenz, RMR, CRR, CRC

23    Date: October 7, 2018

24

25